869 F.2d 1489
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard W. DEWALT, et al., Plaintiffs-Appellants,
v.
CONSOLIDATED RAIL CORPORATION, et al., Defendants-Appellees.
 Nos. 87-3816, 87-3817.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1989.
 
 N.D.OHIO
 AFFIRMED.
 On Appeal from the United States District Court for the Northern District of Ohio.
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Richard Dewalt, a former employee of defendant Conrail, was sitting in his company-provided Ford van when the van was struck from behind by an automobile driven by defendant Charles Zaebst. Mr. Dewalt brought an action against Conrail under the Federal Employers' Liability Act, 45 U.S.C. Secs. 51 et seq., alleging that Conrail had negligently failed to provide him with a safe van. A pendent common law negligence claim was asserted against Mr. Zaebst. The district court (William K. Thomas, J.) directed a verdict in favor of Conrail. The jury awarded $500 in damages on the claim against defendant Zaebst.
 
 
 2
 Mr. Dewalt moved for a new trial as to both defendants and for additur and a judgment n.o.v. with respect to the claim against Zaebst. The district court denied these motions. On appeal, Mr. Dewalt argues that the court should not have directed a verdict for Conrail and should not have denied the post-trial motions. We are unpersuaded by these arguments.
 
 
 3
 Dewalt's wife asserted a claim against Conrail and Zaebst for loss of consortium. Her claim against Conrail was voluntarily dismissed, and the claim against Zaebst was tried separately. The jury returned a verdict for the defendant. Mrs. Dewalt filed post-trial motions seeking additur, judgment n.o.v., and a new trial. The motions were denied. On appeal, she argues that the trial court should have directed a verdict in her favor and that the trial court erred in denying the post-trial motions. We find no merit in these contentions either.
 
 
 4
 * It is well established that evidence of employer negligence that could, with reason, be found to have played any part in producing the plaintiff employee's injury is enough to create a jury question in FELA cases. Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957); Atchison, Topeka and S.F. Ry. Co. v. Buell, 480 U.S. ---, 94 L.Ed.2d 563 (1987). The rule is vividly illustrated by the famous Ohio case of Gallick v. Baltimore & O. R.R., 372 U.S. 108 (1963), where the Supreme Court held that there was sufficient evidence to create a question of fact for the jury when the plaintiff produced evidence tending to show that he had been seriously harmed by the bite of an insect spawned in a pool of fetid water that the railroad suffered to remain on its right-of-way notwithstanding knowledge that the pool was a potential breeding ground for dangerous insects and vermin.
 
 
 5
 Gallick and cases like it teach that the plaintiff in a FELA case may reach the jury with only circumstantial evidence of very slight employer negligence playing a part in producing the plaintiff's injury. Although the causal link between any negligence on the part of the railroad and the plaintiff's injuries in Gallick was attenuated, to say the least, the body of evidence introduced by the plaintiff on the known danger of pools of stagnant water was considerable. Gallick does not excuse a plaintiff's failure to come forward with any evidence of negligence.
 
 
 6
 The theory of Mr. Dewalt's claim against Conrail in the instant case was that Conrail was negligent in failing to replace the factory-installed driver's seat in the Ford van with a modified seat having a higher back. But Mr. Dewalt failed to introduce any evidence at all to show that the factory-installed seat was unsafe. Indeed, the plaintiff's own proposed expert witness testified on voir dire that "there is nothing I know of for a fact that is unsafe about the [standard] lowback bucket seats." The same witness also testified that the special "captain's chair" which the plaintiff argues Conrail ought to have installed was sold "as a comfort item," not as a safety feature.
 
 
 7
 The district court granted the plaintiff leave to call an expert witness on the relative safety of the standard seat and the captain's chair, despite the plaintiff's failure to include such a witness on his witness list. The plaintiff did not call anyone. There was no evidence that it was standard practice for standard seats to be replaced, and no evidence that Conrail knew or should have known that the failure to make such a replacement had ever led to an injury or could do so.
 
 
 8
 As we recently emphasized in another FELA case, the requirement that a plaintiff introduce only "some" evidence of negligence on the part of the defendant railroad does not alter the fact that negligence is still "an essential element of recovery." Stoklosa v. Consolidated Rail Corp., --- F.2d ---- (6th Cir. December 28, 1988). When there is no evidence of that element, there is no genuine issue of material fact. See also Clark v. Kentucky & Ind. Terminal R.R., 728 F.2d 307, 310 (6th Cir.1984) (when there is a "complete absence of probative facts" to support a finding of negligence, a directed verdict is proper).
 
 
 9
 We also note that cases such as Gallick do not purport to repeal the long-established rule that although a railroad is under a duty to supply machinery and devices that are reasonably safe and suitable for its employees' use, it is not required to furnish the latest, best, or safest machinery or devices. Chicago & N.W. R.R. v. Bower, 241 U.S. 470, 473-74 (1916); Rodriquez v. Delray Connecting R.R., 473 F.2d 819, 821 (6th Cir.1973). We agree with the district court that there was no evidence in this case from which a jury could have found that the van furnished by Conrail was not reasonably safe. The fact that Mr. Dewalt might have been safer in a Sherman tank did not obligate Conrail to supply such a vehicle.
 
 II
 
 10
 Mr. Dewalt also argues that the jury's $500 damage award against Mr. Zaebst "was inadequate as a matter of law" and "should shock the judicial conscience." We are neither shocked nor persuaded. The extent of Mr. Dewalt's damages was hotly contested at trial, and the defendants introduced considerable evidence to show that the damages Mr. Dewalt sought to attribute to the collision were actually attributable to unrelated, pre-existing medical problems. The trial court properly left this factual question to the jury, and we see no reason to upset the jury's verdict.
 
 
 11
 Mr. Dewalt argues that the defendants' use of certain pre-1975 medical and personnel records amounted to "trial by ambush" and prejudiced him so severely that he is entitled to a new trial. But Mr. Dewalt never asked Conrail to produce his medical file or personnel file during discovery. This case is therefore completely unlike Erskine v. Consolidated Rail Corp., 814 F.2d 266 (6th Cir.1987), in which documents specifically requested during discovery were not produced by the defendant until they were sprung on the plaintiff in the middle of the trial.
 
 
 12
 The trial court did issue a pretrial order in this case requiring the parties to identify exhibits that "may be offered at trial," and Conrail did not announce its intention to offer any personnel or medical records. But the trial court's "decision to allow or prohibit testimony or witnesses not described or listed in the pretrial order rests with the sound discretion of the trial judge and will not be disturbed except for abuse of discretion." Perry v. Winspur, 782 F.2d 893, 894 (10th Cir.1986). There was no abuse of discretion here. Mr. Dewalt testified that he had never been disqualified from work, that he had never missed work due to injury, that he had never been treated for any psychiatric condition, and that he had never been diagnosed as having cervical arthritis. In light of this testimony, all of which was apparently incorrect, it was well within the trial court's discretion to allow Conrail to impeach the plaintiff's credibility with directly contrary statements from his personnel and medical records. The records were not offered in evidence, did not go to the jury room, and presumably would not have been referred to at all if Mr. Dewalt had been more accurate in his sworn testimony.
 
 
 13
 Conrail also tried to use certain photographs of the van that had not been listed as potential exhibits. The photographs were never shown to the jury, however, and were not admitted. We do not see how the failure to produce the photographs before trial or the unsuccessful attempt to use them as visual aids could possibly have prejudiced the plaintiff's case in any significant way.
 
 
 14
 Mr. Dewalt claims he was prejudiced by improper use of a statement given by his brother to a Conrail claims examiner. We agree with the district court's conclusion that this claim has no merit.
 
 III
 
 15
 Mrs. Dewalt contends that defendant Zaebst admitted liability in his opening statement and that the verdict in Zaebst's favor therefore could not stand. The pertinent sections of the opening statement are as follows:
 
 
 16
 "My client is responsible ... for all damages ... which flow from such an accident. He does not admit, however, that Mrs. Dewalt is entitled to anything in this case, although you may award her some.... [T]he evidence is going to show, very little in the way of loss here. And when you have been charged, ... I expect that you will reach a verdict in the hundreds of dollars [rather than the much larger amount claimed by Mrs. Dewalt]."
 
 
 17
 Mr. Zaebst was clearly conceding, as he had at Mr. Dewalt's trial, that he was liable for the collision, but he never admitted that the collision had proximately caused any compensable injury to Mrs. Dewalt.
 
 
 18
 Mrs. Dewalt's "motion to additur" was not well taken. Her motion for a judgment n.o.v. was properly denied as well. The jury was entitled to disbelieve Mrs. Dewalt's testimony concerning the alleged loss of consortium, and was entitled to find that any loss which may have occurred was not the proximate result of Mr. Zaebst's admitted negligence.
 
 
 19
 Mrs. Dewalt moved for a new trial on the ground that the jury's verdict was against the manifest weight of the evidence. We will not second-guess Judge Thomas's decision not to grant a new trial on this ground.
 
 
 20
 AFFIRMED.